UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **GERTIE F. CAMPBELL, et al.,** | ) |
| **Plaintiffs,** | ) |
| v. | ) NO. 3:23-cv-00029 |
| **DEPUY ORTHOPAEDICS, INC., et al.,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This products liability case is before the Court on Gertie F. Campbell's ("Gertie") and William J. Campbell's ("William") Motions for Partial Summary Judgment (Doc. Nos. 58 and 61).[1] They argue that the cause of their injuries is without dispute because Defendants do not have an expert witness on causation, but whether the Plaintiffs' expectation is to be believed is the responsibility on the jury, not this Court. Accordingly, the Motions for Partial Summary Judgment (Doc. Nos. 58 and 61) will be denied.

### I. BACKGROUND[2]

---

[1] On December 16, 2022, Plaintiffs filed two identical Motions for Partial Summary Judgment. (Compare Doc. No. 58, with Doc. No. 61). This Memorandum Opinion resolves both motions, which will be denied.

[2] The Motions for Partial Summary Judgment fail to comply with procedural local rules required by this Court. Both parties fail to comply with Local Rules 56.01(b) and (c), which require Plaintiffs to file a statement of undisputed material facts and Defendants to file a response. M.D. Tenn. L.R. 56.01(b)-(c). The Court also requires parties to seek permission before filing a motion for partial summary judgment. Judicial Preferences, Chief Judge Waverly D. Crenshaw, Jr., Middle District of Tennessee, https://www.tnmd.uscourts.gov/sites/tnmd/files/Judicial%20Preferences%2020200420.pdf (last revised April 20, 2020). The Court has the discretion to dismiss the pending motions for these reasons. Dawley v. Acme Block & Brick, Inc., No. 2:19-CV-00052, 2021 WL 6501950, at *2 (M.D. Tenn. Feb. 24, 2021) (denying partial summary judgment where the movant failed to comply with the local rules and judicial preferences); Plemons v. Core Civic Admin. Headquarters, No. 3:18-CV-00498, 2019 WL 2725285, at *1 (M.D. Tenn. July 1, 2019). However, the Court recognizes that Plaintiffs' Motions

1

This action arises from personal injuries allegedly suffered by Gertie following her hip replacement surgery. (Doc. No. 1 ¶¶ 38–43). Her spouse, William, asserts a claim for loss of consortium. (Id. ¶ 44). Gertie alleges that on July 6, 2009, she had her left hip surgically replaced by Dr. Phillip A.G. Karpos, (Doc. No. 58 ¶¶ 1–4), with a DePuy brand hip implant, manufactured by the Defendants. (Doc. No. 1 ¶¶ 3–7; Doc. No. 58 ¶ 1). The hip implant is described as having a metal-on-metal, ball and socket joint design. (Doc. No. 1 ¶¶ 15–16; Doc. No. 58 ¶¶ 1, 11, 15).

Plaintiffs concede that the surgery was performed correctly and without complication, (Doc. No. 58 ¶ 4), and Gertie followed all post-surgical instructions and lived a healthy lifestyle to reduce the most problematic of risk factors. (Id. ¶¶ 5–9). But on or around May 23, 2011, Gertie began experiencing significant pain in her left hip and groin area. (Id. ¶¶ 10–11; see also Doc. No. 1 ¶¶ 13–14). She and Dr. Karpos believe her pain was the result of metallosis,[3] caused by the Defendants' metal-on-metal design of her hip implant. (Id. ¶¶ 13–14). Gertie's metallosis and the resulting pain it caused, required another surgery by Dr. Karpos, who applied ceramic and polyethylene coatings to the implant to avoid metal-on-metal contact within the hip joint. (Doc. No. 58 ¶¶ 15–18; Doc. No. 60 at 81–82). Gertie and William seek damages arising from Defendants' negligence, the implant's defective design, and the failure to warn them of the dangerous nature of the implant.

Plaintiffs seek judgment on the issue of liability because Tennessee law requires expert testimony to establish causation, and Dr. Karpos' testimony on the cause of Gertie's complications

---

for Partial Summary Judgment and Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment were filed within the Northern District of Texas *before* transfer to this district. (See Doc. Nos. 58, 61, 71, 73, 76). Because the parties were not yet bound by the Court's rules and preferences when the motions were initially filed, the Court will rule on the merits.

[3] No explicit definition of "metallosis" is provided in the record, but Dr. Karpos describes the affliction as "a response to the metal ions [that] can cause an adverse soft tissue reaction inside of the joint." (Doc. No. 60 at 82). Defendants offer no alternative description.

2

is not challenged by Defendants, so there are no issues of fact concerning the cause of her injuries. (Doc. No. 59 at 1; Doc No. 83 at 3–4). Nonetheless, Defendants oppose summary judgment in the absence of an expert, citing inconsistencies within Dr. Karpos' testimony that create a genuine dispute of material fact regarding causation. (Doc. No. 71 at 3–6).

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Scott v. First S. Nat'l Bank, 936 F.3d 509, 516 (6th Cir. 2019). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). If the movant's initial burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Such parties "must support the[ir] assertion[s] by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations." Blankenship v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., No. 3:19-CV-00146, 2021 WL 3037485, at *2 (M.D. Tenn. July 19, 2021) (citing Fed. R. Civ. P. 56(c)(1)(A)).

When evaluating the record, the Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs., 974 F.3d 652, 660 (6th Cir. 2020). "In determining whether a genuine issue

3

of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party." Williams v. Tyco Elec. Corp., 161 F. App'x 526, 531 (6th Cir. 2006) (citing Anderson, 477 U.S. at 255). Consideration of summary judgment is purely an objective exercise, as the Court is not to make credibility determinations, weigh the evidence, or determine the truth of the matter. Anderson, 477 U.S. at 242, 255.

### III. ANALYSIS

The parties agree that the Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. § 29-28-102(6), applies to this case. "The Sixth Circuit has set forth the requirements to establish a plaintiff's prima facie case under the TPLA as follows: (1) the product was defective and/or unreasonably dangerous; (2) the defect existed at the time the product left the manufacturer's control; and (3) the plaintiff's injury was proximately caused by the defective product." Hill v. Kia Motors Am., Inc., No. 20-5690, 2022 WL 557823, at *6 (6th Cir. Feb. 24, 2022) (citing Sigler v. Am. Honda Motor Co., 532 F.3d 469, 478 (6th Cir. 2008)); see Coffman v. Armstrong Int'l, Inc., 615 S.W.3d 888, 895–98 (Tenn. 2021); King v. Danek Med., Inc., 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000). These three elements apply in all TPLA cases, no matter what theories of liability are asserted. Hill, 2022 WL 557823 at *7 (citing Tenn. Code Ann. § 29-28-102(6)).

Plaintiffs seek partial summary judgment because without an expert witness, Defendant cannot contest the causation element of Plaintiffs' TPLA claims, requiring a judgment in Plaintiffs' favor on the issue of liability. It is true that Defendants present no rebuttal expert to challenge Dr. Karpos' conclusions on the issue of causation. Even so, it is only the Plaintiffs who are required to present expert testimony to establish causation in cases where the plaintiff has suffered a complex medical injury, Tomazin v. Lincare, Inc., No. 3:13-CV-0875, 2015 WL 4545658, at *12 (M.D. Tenn. July 27, 2015) ("[U]nder Tennessee law, medical causation must be established by

4

expert testimony."); Thomas v. Aetna Life & Cas. Co., 812 S.W.2d 278, 283 (Tenn. 1991) ("Medical causation and permanency of an injury must be established in most cases by expert medical testimony."), or in products liability cases. Pride v. BIC Corp., 218 F.3d 566, 580 (6th Cir. 2000) (citing Fulton v. Pfizer Hosp. Prod. Group, Inc., 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993); Browder v. Pettigrew, 541 S.W.2d 402, 404 (Tenn. 1976)) ("[U]nder Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects."); Jastrebski v. Smith & Nephew Richards, Inc., No. 02A01-9803-CV-00068, 1999 WL 144935, at *6 (Tenn. Ct. App. Mar. 18, 1999) (citing Fulton, 872 S.W.2d at 912) ("The product in dispute is a technically complex prescription medical device, and expert testimony is required to establish the causal connection between the alleged defect in the device and [p]laintiff's claimed injuries."); but see Bradley v. Ameristep, Inc., 800 F.3d 205, 209 (6th Cir. 2015) (questioning the Pride court's interpretation of Tennessee law, and finding expert testimony unnecessary to prove causation in certain products liability actions).

The two out-of-circuit cases Plaintiffs rely upon, (Doc. No. 83 at 3, 4), simply reinforce that Plaintiffs, not Defendant, must come forward with expert evidence on causation. In Smith v. General Motors Corp., the *defendant* moved for summary judgment against a *plaintiff* suing for personal injuries related to a defective car seat belt. 376 F. Supp. 2d 664, 665–66 (W.D. Va. 2005), aff'd sub nom. Est. of Smith v. Gen. Motors Corp., 179 F. App'x 890 (4th Cir. 2006). The Smith court explained that "Tennessee law requires a plaintiff to produce expert medical testimony to establish the causal connection between the alleged defect and the plaintiff's injuries." Id. at 667–68. The court granted summary judgment for the defendants because the *plaintiff* "ha[d] not provided any expert medical testimony that the [defendant's] alleged defective restraining system caused her injuries." Id. at 667–68. The second case Plaintiffs quote fairs no better, as that court

5

denied a *plaintiff's* motion seeking relief from its obligation to submit case-specific medical expert testimony to prove causation of medical injuries. In re Baycol Prod. Litig., 321 F. Supp. 2d 1118, 1126 (D. Minn. 2004).

No matter the experts presented, the weight given to expert proof is entirely a jury determination. United States v. Persaud, 866 F.3d 371, 381 (6th Cir. 2017) ("[T]he reliability and believability of expert testimony, once that testimony has been properly admitted, is exclusively for the jury to decide."). The jury may or may not believe Plaintiffs' expert witness, and it is the jury's factual finding that will control whether the causation element has been satisfied. Wildasin v. Mathes, 176 F. Supp. 3d 737, 752 (M.D. Tenn. 2016) (quoting United States v. Calderon, 317 Fed. Appx. 435, 437 (6th Cir. 2007)) ("[A] party is not entitled to summary judgment merely because it offers expert testimony. . . . 'Expert testimony, even if uncontradicted, may be believed in its entirety, in part, or not at all.'"); Cap. City Energy Grp., Inc. v. Kelley Drye & Warren, LLP, 975 F. Supp. 2d 842, 851 (S.D. Ohio 2013) ("[E]ven were [plaintiff expert]'s testimony as to malpractice uncontradicted, a jury would not be bound to accept it."). Furthermore, Defendants are free to challenge the Plaintiffs' expert proof through cross-examination and presenting other evidence on causation. Reed v. PST Vans, Inc., 156 F.3d 1231(table), 1998 WL 466573 at *5 (6th Cir. 1998) (holding that defendants were not required to present their own rebuttal expert opinion where plaintiff's expert opinion was contradicted "through cross-examination and by presenting evidence"); Powers v. Bayliner Marine Corp., 83 F.3d 789, 798–800 (6th Cir. 1996) (citation omitted) (finding a jury's rejection of plaintiffs' expert warranted where cross-examination exposed "infirmities in the only expert testimony presented by plaintiffs").

On the partial summary judgment record before the Court, cross-examination of Dr. Karpos at trial promises to be robust. This is because Dr. Karpos' opinion is far from pristine. At Dr.

Karpos' deposition, he was never asked to explain how he came to diagnose Gertie with metallosis, and no explanation is provided regarding the basis for his diagnosis. (See generally Doc. No. 60). Overall, there is a significant absence of uniformity between his evaluation of Gertie and his diagnosis of metallosis. For instance, Dr. Karpos defines metallosis as "a response to the metal ions [that] can cause an adverse soft tissue reaction inside of the joint." (Doc. No. 60 at 82). He then provides a list of symptoms that can signify metallosis, including the development of a milky fluid within the bone and hip joint (id. at 83, 84), soft tissue destruction (id. at 78, 89), bone destruction (id. at 71), infection (id. at 70, 72, 79, 82, 84), metal debris within the hip joint (id. at 85), necrosis (id. at 85), high metal ion levels (id. at 76, 122), pseudo tumors (id. at 78, 89), and "metal staining of the tissues, where the tissues will be dark and blackened from the metal ions." (Id. at 83, 85). However, Dr. Karpos does not find any of these symptoms present for Gertie at any time, including the time he performed her revision surgery on November 3, 2014. (Id. at 70–72, 76, 78–79, 82–85, 122); see also Doc. 71-1 at 79 (providing agreement from Dr. Sonny Bal that "there was no evidence of soft tissue destruction" and that Dr. Karpos found no evidence of "metallic staining of tissue" or "milky fluid in [Gertie's left hip] joint."). Dr. Karpos even testified that his revision surgery operative notes state that there was "no significant metallosis noted" (Doc. No. 60 at 85), a finding seemingly at odds with his diagnosis of metallosis. (Id. at 114).

What to do with Dr. Karpos' testimony, and critically how much weight it deserves, is the office of the jury. Plaintiffs' Motions for Partial Summary Judgment (Doc. Nos. 58 and 61) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE