UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERTIE F. CAMPBELL and<br>WILLIAM J. CAMPBELL,<br><br>                Plaintiff,<br>v.<br><br>DEPUY ORTHOPAEDICS, INC.,<br>*et al.*<br><br>                Defendants. | No.: 3:23-CV-00029 |

**JOINT STATEMENT OF DISCOVERY DISPUTE REGARDING PLAINTIFFS'
NOTICE TO TAKE RULE 30(b)(6), F.R.C.P. DEPOSITION OF DEFENDANTS
AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiffs and Defendants hereby respectfully submit this joint statement regarding a discovery dispute and their respective positions following extensive meet-and-confer on this dispute.

**I.    DISCOVERY DISPUTE**

Plaintiffs served a Rule 30(b)(6) Notice on October 4, 2022, seeking testimony from a corporate representative. The Notice included thirteen topics and a number of document requests. Defendants' objected and filed an emergency motion for protective order. The Special Master heard argument and granted Defendants' requested relief temporarily, saying that the MDL judge would ultimately rule on the matter. The case was remanded to this Court without a ruling on whether Plaintiffs are entitled to take the noticed testimony. On March 9, 2023, Plaintiffs re-served the notice with the same topics and document requests. Defendants continue to object to any Rule 30(b)(6) deposition.

The parties have engaged in multiple meet-and-confers on the Rule 30(b)(6) topics, with some resultant slimming of topics and modifications.

## II. PROCEDURAL BACKGROUND AND RELEVANT FACTS

### A. Plaintiffs' Statement

<u>Case-Specific Discovery in the MDL</u>

The plaintiffs filed their original Complaint in this Court on October 13, 2011. Their case was then transferred to the MDL conducted by the District Court for the Northern District of Texas. As in every MDL case, the defendants were required to file a Defendants' Fact Sheet. This filing contained the following minimal information about the plaintiffs' case: device history record; complaint file; medical records of the plaintiff; sales representatives' names and business addresses; consultant payment information report.

<u>While plaintiffs' case was held in a pending status in the MDL, the plaintiffs were not allowed to conduct any case-specific discovery</u>. All such discovery was stayed by Court order until September 16, 2022, when the MDL court reversed (without any explanation) its previously announced plan to transfer all remaining cases back to their original jurisdictions for trial and for case-specific discovery. On that date, the MDL Court announced it was going to retain jurisdiction for case-specific discovery purposes and the MDL Court entered a scheduling order requiring the parties to amend pleadings, complete case-specific discovery and file pretrial dispositive motions. Plaintiffs promptly filed their amended complaint on September 30, 2022. Defendants filed completely generic and non-specific answers on October 11, 2022. Plaintiffs objected to defendants' answers as deficient and the MDL Court ordered the defendants to file responsive answers no later than December 16, 2022. Defendants filed their amended answers on

2

December 15, 2022. Fifteen days later, the MDL Court entered notice that it was transferring the Campbell case back to the Middle District of Tennessee.

On October 4, 2022, (in the MDL) plaintiffs served a notice to take the deposition of defendants pursuant to Rule 30(b)(6), *F.R.C.P.*, on October 24, 2022. On October 21, 2022, defendants filed an objection to this notice and the Special Master scheduled a hearing on Sunday, October 23, 2022, "on an emergency basis." In their motion and in their argument, defendants claimed that the District Court "did not intend" to allow any plaintiff to take any case-specific discovery until after the defendants had taken the depositions of the implanting surgeons. The record contained no statement indicating this was the District Court's "intention." Nevertheless, the Special Master granted an emergency stay pending a ruling by the District Court. Plaintiffs filed objections to the Special Master's ruling and made repeated requests thereafter for the District Court to take action but the MDL District Court never ruled on the outstanding Rule 30(b)(6) discovery issue.

The Fact that Extensive Global Discovery Occurred in the MDL
Does Not Obviate Plaintiffs' Right and Need for Case-Specific Discovery

The plaintiffs need case-specific discovery to prepare their specific case for trial. The defendants deposed the plaintiffs about their case-specific claims and evidence. The plaintiffs have a corresponding right and need to depose defendants regarding case-specific information, evidence and documents the defendants have that relate to plaintiffs.

Plaintiffs' attorneys worked diligently to revise the Rule 30(b)(6) "topics" to make them "tightly focused" on the case-specific information plaintiffs need to prepare and try this case. They requested input from defendants' counsel in regard to this effort.

Defendants do not claim the revised Rule 30(b)(6) topics are vague or that they are irrelevant to the case-specific disputes between the parties. Defendants do not articulate how any topic creates an unreasonable burden on them.

Defendants' basic argument is that they have provided millions of pages of documents in the MDL and plaintiffs can mine this database and then draw their own conclusions about what a document means or what the defendants might contend about the document at trial.

In the first place, plaintiffs still are not able to access this complete database of documents. The General Document Production that defendants refer to as containing millions of pages of documents became inaccessible to plaintiffs some time before the stay was lifted on September 16, 2022. Plaintiffs had to purchase four hard drives containing the documents and employ a service to upload those documents from the hard drives into a repository for plaintiffs to access. It took months after the request was made for the 6,000,000 plus documents to be downloaded to the hard drives. The service that is diligently working on uploading the documents to the repository is currently at 5,161,057 available documents. However, at this point, in order to upload the documents as quickly as possible, those documents are only accessible in a text (.txt) format and not in their native format. This makes viewing the documents much more difficult. More significantly, the existence of this database does not reveal what the defendants contend that any document means in the context of plaintiffs' case. Finally, merely finding a document in the database does not provide an evidentiary context for the document at trial. It does not explain how defendants used the document, or the information contained in the document. It does not provide any verification of the document beyond the fact that the document was located at one time in a defendant's file.

4

Case 3:23-cv-00029    Document 99    Filed 05/16/23    Page 4 of 20 PageID #: 106

### B. Defendants' Statement

The Pinnacle MDL was formed pursuant to Section 1407 to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary." May 24, 2011 JPML Order (granting centralization). At its peak, there were nearly 11,000 cases pending in the program. By September 2022, approximately 80 cases remained and the Court ordered case-specific discovery in those remaining cases. In early 2023, more than 60 cases were remanded for final pretrial activity and trial.

Over the course of more than seven years of MDL discovery, Defendants undertook reasonable and diligent efforts to collect, review, and produce ***millions of pages of documents*** pertaining to the Pinnacle Cup System, including with regard to such subjects as research and development, regulatory, manufacturing, labeling, marketing, sales, distribution, product communications, and pharmacovigilance (the "General Document Production"). These discovery activities were conducted pursuant to numerous case management orders and pursuant to the efforts of the court-appointed Plaintiff Executive Committee. Defendants' custodial collections encompassed ***hundreds*** of different current and former employees, as well as centralized noncustodial sources of data and documents. In addition, more than 40 defense witnesses were deposed in either an individual or corporate representative capacity, over more than 50 days, resulting in more than 10,000 pages of company testimony. A number of Defendants' employees also testified at deposition or trial regarding DePuy's Pinnacle hip implant. The Pinnacle MDL court oversaw four bellwether trials (and a retrial) amounting to more than 134 trial days and 31,500 pages of trial transcripts.

Plaintiffs have access to the General Document Production, deposition transcripts, and bellwether trial materials. The General Document Production was originally provided to and maintained by the Plaintiff Executive Committee and copies of the database are being made available to individual plaintiffs' counsel, including counsel in this case. It is Defendants' understanding that Plaintiffs' counsel in this case took possession of the General Document Production recently. The General Document Production—which has been available for a number of years—also includes communications with individual surgeons; general product communications; all final Instructions for Use, Surgical Technique Brochures and Technical Monographs from product launch through and including last date of sale; sales training materials from product launch through and including last date of sale; and numerous distributor and sales representative custodial files. The General Document Production is organized by custodian and/or source, is fully searchable, and was produced to the PEC in a reasonably useable form and in compliance with the requirements of Case Management Order No. 4 entered in the Pinnacle MDL.

Defendants also collected and produced case-specific information and documents in each individual case via a form called the Defendant Fact Sheet—a discovery template developed by the Plaintiff Executive Committee to facilitate the systemic production of case-specific materials in every case. The contents of the Defendant Fact Sheet are governed by the MDL Case Management Order 5 and all subsequent amendments. The Defendant Fact Sheet included written responses and was accompanied by the production of case-specific documents. For example, the Defendant Fact Sheet produced in this case included information about payments made by Defendants to the implanting surgeon and the names of sales representatives who may have attended the implant and revision surgeries.

6

In addition to Defendants' discovery responses and productions, the parties engaged in case-specific discovery in the Fall of 2022. In particular, Plaintiff Gertie Campbell's implant and revision surgeon, Dr. Philip Karpos, was deposed on November 18, 2022 at which time both parties had the opportunity to fully examine him. Prior to the deposition, Plaintiffs served document requests on Dr. Karpos seeking the production of documents. The parties also exchanged expert reports.

Defendants did oppose Plaintiffs' deposition notices issued for a sales representative, distributor, and a Rule 30(b)(6) corporate representative while this case was still pending before the MDL. As Defendants' counsel stated to the Special Master, the Topics in Plaintiffs' Notice were not appropriate for this phase of the litigation:

> [A]s a general matter, orthopedic representatives in their role was to facilitate the order and delivery of inventory for surgery. Testimony of representatives was not used by the Plaintiff's steering committee in any of the other trials. And with millions of documents and hundreds of custodial documents and depositions produced, the company discovery in general is closed and not is just not the time for sales representatives based on schedule and work up that we have. But more importantly, as Your Honor had indicated this surgeon hasn't even been deposed yet. This surgeon hasn't had the opportunity to tell us if he had any interactions with the distributor or the representative in question and I think that that would be the period for the Plaintiff lawyer and for the DePuy attorneys to ask their questions of the surgeon and decide if this is even testimony that would be in some reason necessary.

At the implanting surgeon deposition, however, Plaintiffs' counsel opted to not ask Dr. Karpos questions that might demonstrate the need for further company discovery. Dr. Karpos testified that he did not rely on the company or the sales representative for risk information and instead relied on journal articles and medical societies for new and emerging information. The topics raised in Plaintiffs' Rule 30(b)(6) Notice are an improper attempt to supplement discovery on issues that should have been addressed at the deposition of Dr. Karpos.

7

Case 3:23-cv-00029   Document 99   Filed 05/16/23   Page 7 of 20 PageID #: 109

### III. LEGAL AUTHORITY

#### A. Plaintiffs' Statement of Legal Argument.

The Sixth Circuit recognizes the use of a Rule 30(b)(6) deposition to cover a number of discovery topics:

> *i. All Allegations in the Complaint and Answer (Topics 1 and 3)*
>
> Huntington argues that seeking testimony on all facts related to the allegations in the Complaint, Answer, or affirmative defenses (as Topic 1 does) falls short of the reasonable particularity requirement. (Doc. 42-1 at 6-7; *see also* Topic 1: "All allegations in the Complaint and Answer including any affirmative defense pled by You."). However, courts have consistently held "that a *Rule 30(b)(6)* notice of deposition that seeks the factual bases for another party's claims or defenses is proper." *Smith, 2006 U.S. Dist. LEXIS 19093, 2006 WL 7276959, at \*3* (citing *Bd. of Regents v. Nippon Tel. and Tel. Corp., 2004 U.S. Dist LEXIS 28819, \*15-17 (W.D. Tex. June 1, 2004)* (holding that it was improper to refuse to provide *Rule 30(b)(6)* testimony regarding the factual bases of its affirmative defenses)). Consequently, to the extent Topic 1 seeks testimony regarding the factual bases of the Answer and any affirmative defenses, the Court finds it to be proper.

*Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, 2018 U.S. Dist. LEXIS 114267, 16; 2018 WL 3358641.

> The Court agrees that plaintiffs' *Rule 30(b)(6)* deponent(s) is not required to give expert testimony; rather, the deponent must have knowledge of the *factual* basis for plaintiffs' claims. See *Smith v. Gen. Mills, Inc., No. C2 04-705, 2006 U.S. Dist. LEXIS 19093, 2006 WL 7276959, at \*3 (S.D. Ohio Apr. 13, 2006)* ("[N]umerous courts have ruled that a *Rule 30(b)(6)* notice of deposition that seeks the factual bases for another party's claims or defenses is proper.") (citing cases).

*Babcock Power, Inc. v. Kapsalis*, 2016 U.S. Dist. LEXIS 158370, 6.

> Plaintiff seeks testimony about "[t]he factual basis upon which TriHealth relies" to assert its various affirmative defenses as well as "[t]he material facts upon which TriHealth" bases its counterclaim of unjust enrichment. TriHealth protests that inquiry into which facts are *material* to an affirmative defense is a legal question to which no lay witness could reasonably testify.
>
> \* \* \*
>
> TriHealth may have a valid point if Plaintiff were asking for a corporate representative to testify extensively about the legal theories or elements of its counterclaim or defenses. And to the extent that Plaintiff seeks a representative to testify about his or her view of the legal "materiality" of the underlying facts in Topic 32, TriHealth's motion is well-taken.[5] However, this Court will not assume that inquiries into facts underlying

8

TriHealth's affirmative defenses and counterclaim is merely a pretense for asking lay witnesses to espouse on TriHealth's legal theories. The facts underlying a party's claims and defenses are at the heart of all discovery, as "nonprivileged matter that is relevant to any party's claim or defense...." *Fed. R. Civ. P. Rule 26(b)(1)*; see also *Majestic Building Maint., Inc. v. Huntington Bancshares Inc., 2018 U.S. Dist. LEXIS 114267, 2018 WL 3358641 (S.D. Ohio July 10, 2018)*; *Smith v. General Mills, Inc., 2006 U.S. Dist. LEXIS 19093, 2006 WL 7276959 (S.D. Ohio April 13, 2006)*.

[5] TriHealth argues that "the material facts upon which TriHealth's counterclaim for unjust enrichment is based are detailed in the amended counterclaim. (Doc. 88 at ¶¶5-31). Be that as it may, Plaintiff is not required to merely accept TriHealth's allegations but is entitled to discovery concerning the alleged facts.

*Shahbabian v. Trihealth, Inc.*, 2020 U.S. Dist. LEXIS 13243 *; 2020 WL 419443, 18, 19.

In other words, Plaintiff is entitled to explore [using Rule 30(b)(6)] Defendant's factual knowledge and its evidence in support of its own affirmative defenses.

*Oak Point Partners, LLC v. Blue Cross Blue Shield of Mich.*, 2020 U.S. Dist. LEXIS 221310 *; 2020 WL 6939667, 2, 3.

Plaintiffs' Rule 30(b)(6) notice topics do not "reopen" the general case discovery. Plaintiffs do not claim that the "general discovery" process in the MDL did not cover the "general" liability issues. That discovery, however, was not "case specific" to the Campbells' case. The plaintiffs are entitled to case-specific discovery. All of the topics in plaintiffs' Rule 30(b)(6) notice are case-specific topics.

### B. Defendants' Statement of Legal Argument.

Rule 30(b)(6) was designed to supplement existing discovery practice; and an "overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." *Richardson v. Rock City Mech. Co., LLC*, No. CV 3-09-0092, 2010 WL 711830, at *6 (M.D. Tenn. Feb. 24, 2010) (citing *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000)). Similarly, Rule 30(b)(6) "is intended to **streamline** discovery." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019) (emphasis added). Thus, a court may consider if the requested 30(b)(6) deposition would be used inefficiently "as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period . . . so that the burden on

9

Defendant of designating and preparing a witness would almost certainly outweigh the benefit to Plaintiff." *Id.* (citing *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017)).

While the discovery rules generally permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," particular requests—including Rule 30(b)(6) topics—must be evaluated in light of the proportionality factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The proportionality requirement was added in 2015 to "encourage judges to be more aggressive in identifying and ***discouraging discovery overuse***." *Id.*, Advisory Committee Notes (2015) (emphasis added). Further, Rule 26(b)(2)(C) also requires discovery to be limited if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." This rule likewise applies to a Rule 30(b)(6) deposition notice. *Edwards*, 331 F.R.D. at 121-22 (citing *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023TBRLLK, 2018 WL 826379, at *3 (W.D. Ky. Feb. 9, 2018)).

In consolidated proceedings and multi-district litigation ("MDLs"), particular deference must be given to the stepwise conduct of general company and expert discovery conducted by a court-appointment committee of plaintiffs' counsel, followed by limited case-specific discovery in individual cases. *See, e.g.*, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (coordinating Pinnacle cases will "eliminate duplicative discovery" "and conserve the resources of the parties, their counsel and the judiciary").

Typically, case-specific discovery encompasses the exchange of written discovery in the form of a Plaintiff Fact Sheet and Defendant Fact Sheet; depositions of plaintiffs, friends and family, and treating physicians; and the exchange of case-specific expert reports and limited expert depositions. The case-specific discovery period does not reopen general case discovery on topics which an individual counsel may claim was inadequately addressed by the PEC. *See also In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, 2011 U.S. Dist. LEXIS 7890, at *88-89 (S.D.N.Y. Jan. 24, 2011) ("Permitting either party the opportunity to re-depose general causation experts at the outset of every bellwether trial would greatly diminish the efficiency of the MDL process"); *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 1285359, at *8 (D. Kan. Mar. 18, 2020) (holding that "additional [fact] depositions [we]re not proportional to the needs of the case" where plaintiff did not "explain[] how any of these tangential depositions . . . would bear on subject matter that is not already covered"); *Vale v. Great Neck Water Pollution Control Dist.*, No. 14-CV-4229 (ADS) (AYS), 2016 WL 11269253, at *3 (E.D.N.Y. May 31, 2016) (granting motion to quash and for a protective order where testimony sought was "cumulative and duplicative" and thus deponent would be "unduly burdened if he were required to appear and testify at a deposition when the information sought by [p]laintiff has already been provided").

Further, courts may limit discovery of ancillary company witnesses, such as sales reps, where plaintiffs fail to demonstrate a link between the treating physician and any contacts with the sales rep. As another court recently held, sales representative depositions are not relevant to Pinnacle cases where, as here, the "plaintiffs d[id] not identify any testimony from either [plaintiffs'] doctor[s] that suggests the detail representatives who attended plaintiff's surgeries have knowledge about plaintiffs' claims." Mem. Op. & Order ("*Baldwin* Order") at 1-2, *Baldwin v. DePuy Orthopaedics, Inc.*, No. 1:23-cv-00020, ECF No. 95 (N.D. Ill. Mar. 30, 2023).

11

Moreover, any testimony from the sales representatives would be duplicative of "information [that] would have come from defendants, who have already produced voluminous documents and witnesses for depositions." *Id.* The court concluded that sales representative testimony was not relevant to the plaintiffs' claims because the implanting surgeon "testified that he did not make clinical decisions for patients based on marketing material from device manufacturers, and [that] he could not recall any specific information about the Pinnacle device that he reviewed and relied on in deciding to use the device for plaintiff." *Id.* at 1-2 (noting plaintiffs failed to demonstrate a sufficient "nexus to plaintiffs' claims").

## IV.     TOPIC-BY-TOPIC DISCUSSION OF THE PARTIES' POSITIONS

**Topic 1:** "All contacts and communications defendants or their representatives had with Dr. Philip A. G. Karpos, or any other surgeon or manager of Tennessee Orthopaedic Alliance, PA, relating to DePuy Pinnacle Metal-on-Metal hip implants ("Pinnacle MoM devices"). The dates covered are January 1, 2005 through the present.

**Modified Version following meet-and-confer**: "All contacts and communications defendants or their representatives had with Dr. Philip A. G. Karpos, or any other surgeon or manager of Tennessee Orthopaedic Alliance, PA, relating to reports of adverse tissue reactions and/or metallosis in association with chromium-cobalt metal-on-metal hip surfaces manufactured by DePuy. The period covered is September 1, 2008, through the date of Mrs. Campbell's implant surgery, July 6, 2009.

- *Plaintiffs' Position as to Topic 1:* In September of 2008, Dr. Schmalzeried (a "high-profile" hip surgeon who was paid more than 30 million dollars in fees by DePuy in connection with metal-on-metal hips) notified DePuy's sales organization that numerous reports were made at the "hip society" meeting in September 2008 regarding patient injuries associated with DePuy's metal-on-metal hips. On September 26, 2008, DePuy's hip sales manager drafted an email relating to this. *See* DEPUY003502811-12.

    Evidence presented in the bellwether trials demonstrated that DePuy and Johnson & Johnson came up with a strategy to convince surgeons that the metal reaction problems that were being observed and reported were either, (1) idiosyncratic patient reactions to the

12

metal or (2) the result of the improper surgical techniques during implantation. In April 2009, DePuy representatives delivered a video to Tennessee Orthopaedic Alliance demonstrating proper surgical implantation techniques. Plaintiffs assert that this was part of defendants' effort to convince Tennessee Orthopaedic Alliance surgeons that the metal-on-metal "problems" being reported or observed were not caused by the inherent defects in the hip product itself. Item of inquiry 1, as modified, is focused on the time period immediately preceding the implantation of the device into plaintiff's body and on, what plaintiffs assert, was the execution of defendants' plan to conceal from plaintiff's surgeon the very real danger inherent in using the Pinnacle metal-on-metal hip.

- *Defendants' position as to Topic 1*: Defendants object to Topic 1 because they have already produced documents and data responsive to this request, including the Defendant Fact Sheet and the word-searchable General Document Production. Defendants also re-produced responsive documents from the General Document Production as a courtesy for Plaintiffs' counsel. The produced documents include communications with Dr. Karpos and his medical practice. In addition, Dr. Karpos was deposed in November 2022, as which time Plaintiffs' counsel had ample opportunity to question Dr. Karpos on this Topic and to obtain any additional responsive documents. Dr. Karpos testified that he did not rely on the DePuy sales rep in making treatment decisions and instead considered updated risk information from published literature and medical societies. Therefore, Plaintiffs already have responsive documents and information in their possession, and a further Rule 30(b)(6) deposition on this topic will be cumulative and unduly burdensome on Defendants and seeks information that is more appropriately the subject of written discovery.

**Topic 5**: All records in the possession, custody or control of the defendants relating to or mentioning Gertie F. Campbell.

- *Plaintiffs' Position on Topic 5*: This is a vital area of discovery. The defendants required DePuy's product representatives to file a medical device report (MDR) for every revision surgery made from a Pinnacle metal-on-metal hip. The importance of doing so was repeatedly emphasized by DePuy. Reporting any/all DePuy product revisions on a MDR [medical device report] within 24 hours of revision was a top priority requirement for DePuy representatives and a non-reporting was a cause of termination. *See* PLAIS-ST-091551; DEPUY099725262. Mrs. Campbell's medical record shows that a DePuy product representative attended Mrs. Campbell's revision surgery. Nevertheless, DePuy claims it does not have this report on Mrs. Campbell's revision surgery. DePuy's attorneys state that the DePuy representatives are not employees of DePuy, but that the DePuy defense attorneys represent the "DePuy representatives" and plaintiffs' attorney may not contact the representatives directly.

  The full import of Mrs. Campbell's "missing record" to this case cannot be determined without Rule 30(b)(6) discovery.

  From a broader perspective, defendants state they are not willing to provide a verification that defendants have produced all documents relating to Mrs. Campbell that are in their possession, custody or control. Also, defendants have not filed a case-specific privilege log disclosing what, if any, documents relating to or mentioning Mrs. Campbell are withheld under a claim of privilege.

- *Defendants' Position on Topic 5*: Defendants object to Topic 5 because Defendants have already provided responsive information to Plaintiffs, as part of the General Document Production and case-specific productions, and in response to Plaintiffs' document requests No. 6 and 10. Defendants' document production included DePuy's complaint file

associated with Plaintiff Gertie Campbell's case as well as other documents in which her name is referenced. Defendants' written responses include specific Bates ranges of responsive documents, and those documents were re-produced to Plaintiffs' counsel as a courtesy.

Moreover, the significance of the allegedly "missing record" is de minimus, at best. Plaintiffs' counsel expressed an interest in reviewing the sales representative's record from the revision surgeon on the basis that it may contain contemporaneous statements made during surgery about the reason for the revision—but that information is already available from the hospital records and the surgeon's own testimony. The burden of producing a corporate representative to provide testimony on Topic 5 is disproportionate, particularly when, as here, complete information is already in Plaintiffs' possession through other sources.

To the extent Plaintiffs are attempting to expand Topic 5 to include general questioning about DePuy's process for receiving and processing information about individual patients, that topic has already been the focus of discovery in the MDL proceedings, including the subject of a Rule 30(b)(6) deposition. At that deposition, the deponent testified there are many reasons why a medical device report may not be available in a particular case. Plaintiffs are in possession of all of this discovery. Another Rule 30(b)(6) deposition on these Topics will be unduly burdensome on Defendants and seek information that is more appropriately the subject of written discovery. Further, a verification stating that production is complete is unnecessary and contrary to the Federal Rules. Similarly, a privilege log is only required if material is withheld for privilege.

**Topic 7**:  The current revision rate and/or the survivorship rate for the Pinnacle MoM Device and the underlying data and information from which those survivorship rates and revision rates were determined.

- *Plaintiffs' Position on Topic 7*:  The "current revision rate" and/or "the survivorship rate" for the Pinnacle MoM device was a central and very disputed area of proof in each of the bellwether trials.  DePuy maintained its own database regarding Pinnacle revisions and the bellwether plaintiffs effectively established that a number of revisions were not included in DePuy's own database.  In any case, plaintiffs are entitled to find out what defendants claim is the <u>current</u> revision rate for the Pinnacle metal-on-metal hips in order to be prepared to determine and/or dispute the accuracy of those claims at trial.  Under any circumstances, defendants are required to update previous discovery responses based on information they received after those responses were made.

- *Defendants' Position on Topic 7*:  Defendants object to Topic 7 because "revision rates" is a topic best left for expert opinion.  As Plaintiffs note, the "revision rate" for Pinnacle MoM devices has been vigorously debated by both sides because it is not a simple calculation; instead, it requires thorough analysis and the interpretation myriad data points, many of which are from publicly available sources, such as national registries that track MoM revisions.  Forcing a deposition on this Topic will necessitate reopening expert disclosures and discovery.  Further, this Topic was subject to extensive discovery during the consolidated Pinnacle MDL and bellwether trials, making further discovery on the topic unnecessarily cumulative and unduly burdensome.  Plaintiffs are in possession of all of this discovery.  The Topic is also is not a case-specific issue and therefore is not an appropriate topic for this phase of post-MDL remand proceedings.

**Topic 8**:  All information contained in the full, complete, and unredacted Complaint file for Gertie F. Campbell.

- *Plaintiffs' Position on Topic 8*: See the comment for Item 5 above. Defendants have provided additional documents mentioning Mrs. Campbell to plaintiffs' counsel within the last ten days. Defendants, however, state they are unwilling to provide an affidavit that all documents relating to or mentioning Mrs. Campbell have now been furnished. The efforts made by defendants to locate documents relating to Mrs. Campbell that are in defendants files, or should be in those files, is a relevant area of inquiry. In addition, defendants have not produced a case-specific privilege log. If defendants have disclosed all their documents mentioning Mrs. Campbell, a witness should be able to describe defendants' efforts to locate such documents and state that to the best of defendants' knowledge, information and belief, all such documents have now been produced. This testimony can be efficiently given.
- *Defendants' Position on Topic 8*: Defendants object to Topic 8 because Defendants have already provided responsive information to Plaintiffs. The initial production was made years ago and was updated recently with additional information, nearly all of which was already available to Plaintiffs from other sources.

  To the extent Plaintiffs are attempting to expand Topic 8 to include general questioning about the sufficiency of DePuy's production and its practices for receiving and processing information about individual patients, that topic has already been the focus of discovery in the MDL proceedings, including a Rule 30(b)(6) deposition. Plaintiffs are in possession of all of this discovery. As such, a further Rule 30(b)(6) deposition on this Topic will be unduly burdensome on Defendants and seeks information that is more appropriately the subject of written discovery. It also is not a case-specific issue and therefore is not an appropriate topic for this phase of post-MDL remand proceedings.

**Topic 9**: The complete factual and evidentiary basis for each affirmative defense the defendants assert in Gertie F. Campbell's case.

**Topic 10**: The complete factual and evidentiary basis for each comparative fault assertion the defendant asserts in Gertie F. Campbell's case.

**Topic 11**: The factual and evidentiary basis for each denial of an allegation made by Gertie F. Campbell in her amended complaint.

- *Plaintiffs' Position on Topics 9, 10, and 11*: During discussions of these items, defendants have repeatedly asserted that these items of inquiry are not proper items of discovery under in Rule 30(b)(6). Plaintiffs' attorney provided recent citations (see **Plaintiffs' Statement of Legal Argument** above) to defense counsel from District Courts in the Sixth Circuit in which the Courts rejected defendants' objections.

- *Defendants' Position on Topics 9, 10, and 11*: Defendants object to Topics 9, 10, and 11 because the factual and evidentiary bases for the statements in the Answer are already available to and in the possession of Plaintiffs in the form of the discovery completed in the Fall of 2022, including the deposition of surgeon Dr. Karpos, production of the Defendant Fact Sheet and related materials, and the exchange of expert reports. Forcing Defendants to supply a corporate representative to repeat these facts in a deposition would be unduly burdensome on Defendants, duplicative, and unnecessary.

Dated: May 16, 2023                           Respectfully submitted,

*/s/ Molly E. Flynn*
Molly E. Flynn, Esq.
molly.flynn@btlaw.com
BARNES & THORNBURG LLP
1717 Arch Street
Suite 4900
Philadelphia, PA 19103

Tara L. Blake
tara.blake@butlersnow.com
BUTLER SNOW LLP

The Pinnacle at Symphony Place
150 3rd Avenue South
Suite 1600
Nashville, TN 37201

*Counsel for Defendants Medical Device Business Services Inc., f/k/a DePuy Orthopaedics, Inc.; DePuy, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; and Johnson & Johnson International*

*/s/ Jon Edward Jones*
Jon Edward Jones, Esq., BPR #2848
LAW OFFICE OF JON E. JONES
345 S. Jefferson Avenue, Suite 400
Cookeville, TN 38501
(931) 372-8771
jejones@frontiernet.net

/s/ *Patrick Shea Callahan*
Patrick Shea Callahan, Esq., BPR #29086
CALLAHAN & BINKLEY, PLC
321 East Spring Street, Suite 304
Cookeville, TN 38501
(931) 650-3322
shea@callahanbinkley.com

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

It is hereby certified that service of a true and correct copy of the foregoing Joint Statement of Discovery Dispute Regarding Plaintiffs' Notice to Take Rule 30(b)(6), F.R.C.P. Deposition of Defendants and Request for Production of Documents has been made upon the following by electronic mail on this 16th day of May, 2023.

Jon Edward Jones, Esq.
LAW OFFICE OF JON E. JONES
345 S. Jefferson Avenue, Suite 400
Cookeville, TN 38501
(931) 372-8771
jejones@frontiernet.net

*Attorney for Plaintiffs*

> */s/ Molly E. Flynn*
> Molly E. Flynn, Esq.